**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JEAN-MARC FAISON, # R-41130, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-0598-NJR |
| | ) | |
| C/O HELD, SERGEANT DILLINGHAM, | ) | |
| KIMBERLY S. BUTLER, and | ) | |
| C/O WARD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants violated his First Amendment right to free speech by retaliating against him for exercising his free speech as a law clerk in the law library. In connection with his retaliation claims, he alleges a conspiracy amongst Defendants to punish him for exercising his First Amendment rights. He also alleges a violation of his Eighth Amendment rights based upon the conditions of his confinement in what he characterizes as a special cell block of the facility. Finally, he alleges a Fourth Amendment violation based upon an officer's conduct during a urine test, which he believed was overly intrusive and improper.

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. As part of the § 1915A screening, the Court possesses the discretion to sever claims into separate complaints if the claims are not related to one another. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate

lawsuits). Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has stated a potential First Amendment claim against Defendants identified below in association with that claim. As to the Eighth Amendment claim, the Court finds that Plaintiff has provided sufficient factual information to support a potentially colorable claim; that claim will proceed as to Defendant Butler. The Court is exercising its authority to sever the Fourth Amendment claim because it relates to an incident that is factually remote in time, and the complaint lacks explicit facts tying the incident to the First or Eighth Amendment claims.

This Memorandum and Order addresses the First and Eighth Amendment claims; the Fourth Amendment claim will receive separate § 1915A screening once it has been assigned a new case number, assessed filing fees, and received a judge assignment.

## Background

The factual allegations relating to the First and Eighth Amendment claims are as follows: Plaintiff worked in the law library at Menard, where part of his job included issuing library passes to other inmates to visit the library facility (Doc. 8 at 3). Between October and November of 2014, Plaintiff alleges that Defendant Held—acting as a law library security officer—approached him and instructed him not to issue law library passes to a "black list" of inmates who had filed grievances against Held or Held's friends (*Id.*). Plaintiff orally responded, indicating that he would not comply with Held's request (*Id.* at 3-4). Plaintiff alleges that as a result of his refusal to participate in Held's scheme, Held fired him from his job and conspired with Defendant Dillingham (internal affairs department) to have Plaintiff transferred from his cell to a special cell in the "North 2 Cell house" region of Menard (*Id.* at 4). North 2 is apparently known as a "modified Tamms" step-down program, meant to house violent, sexually predatory inmates, or those unable to reside with cellmates (*Id.*).

Plaintiff's new cell in North 2 did not have any window exposure and was in the direct line of a light that was on twenty-four hours a day (*Id.*). The cell was located directly above "crisis watch" cells whose occupants made noise at all hours and caused disruptions by smearing feces about their cells (*Id.*). Plaintiff alleges that his mental illness was exacerbated by this placement, and the placement ultimately required him to recommence psychotropic medication (*Id.* at 4-5). He claims that while in North 2 for six months, he suffered sleep deprivation, insomnia, intense anxiety, panic attacks, delusions, and depression (*Id.* at 5). Plaintiff filed grievances about his deteriorating health while housed in North 2 (*Id.*).

Plaintiff alleges that one such emergency grievance that he lodged with the Warden was ignored, constituting deliberate indifference (*Id.*). He subsequently raised the issue with his prison counselor, who helped him to secure administrative review through the grievance procedure (*Id.*). On October 23, 2015, a grievance officer found that Plaintiff's allegations about retaliatory firing and his relocation to North 2 were substantiated (*Id.* at 6, 22). The grievance officer found, however, that the grievance had been rendered moot by Plaintiff's move from North 2 to a new cell (*Id.*). The grievance form declined monetary relief (*Id.*). The Administrative Review Board declined review of the grievance in January 2016, noting that the grievance was rendered moot by Plaintiff's new housing location (*Id.* at 6-7, 22).

In support of his claims, Plaintiff provided the grievance that his counselor assisted him with, as well as affidavits of inmates who witnessed and heard about his interaction with Held in the law library and who had similarly been transferred to North 2 (*Id.* at 10-18).

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* complaint into the following enumerated claims. The parties and the Court will use these designations in all

future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The

designation of these counts does not constitute an opinion regarding their merit.

| | |
|---|---|
| **Count 1:** | First Amendment claim of retaliation for Defendant Held's firing of Plaintiff from the law library after Plaintiff refused to prevent other inmates from library access; |
| **Count 2:** | First Amendment claim of retaliation for Defendants Held and Dillingham's transfer of Plaintiff to the North 2 cell house as added punishment for the library incident; |
| **Count 3**: | Conspiracy claim against Defendants Held and Dillingham for the firing and housing transfer of Plaintiff; |
| **Count 4**: | Eighth Amendment deliberate indifference to cruel and unusual conditions of confinement claim for conditions of the North 2 cell house as it relates to Defendant Butler's failure to address Plaintiff's emergency grievance; and |
| **Count 5**: | Fourth Amendment unreasonable and invasive search claim for Defendant Ward's conduct during a urine test on September 22, 2015. |

As discussed below, Counts 1-3 will be allowed to proceed beyond screening as to

Defendants Held and Dillingham, Count 4 will be allowed to proceed against Defendant Butler.

Count 5 will be severed into a separate action.

*Count 1*

The First Amendment protects a citizen's right to free speech, but its protection is not

unfettered, and it can be subject to a number of limitations based upon the citizen's position in

society or in his or her employment. U.S. CONST., amend. I. Prisoners are such citizens, subject

to various restrictions on their First Amendment rights based upon their incarcerated status and

the need of prison administrators to maintain control over the institution. *See Turner v. Safley*,

428 U.S. 78, 89-91 (1987) (establishing a multi-part test to assess the constitutionality of a prison

restriction:  (1) whether the restriction is reasonably related to a legitimate penological purpose;

(2) whether there are alternate means of exercising a right that remain open to the prisoner; (3) what impact accommodating a right would have on other inmates, guards, etc.; and (4) in default, the reasonableness of the regulation); *Watkins v. Kasper*, 599 F.3d 791, 796-97 (7th Cir. 2010) (applying the *Turner* factors to a case where an inmate spoke out about fellow inmates' rights in the law library and faced alleged retaliation). The Seventh Circuit very recently considered a prisoner's First Amendment retaliation claim in *Ogurek v. Gabor*, No. 15-1151, 2016 WL 3512626, *1 (decided June 27, 2016).

In *Ogurek*, the Seventh Circuit discussed the tension amidst the line of First Amendment cases involving prisoners, noting that precedent is somewhat unclear as to the free speech rights of prisoner-employees versus normal government employees and other citizens. *Id.* at *2; *see also Herron v. Meyer*, 820 F.3d 860, 863-64 (7th Cir. 2016) (noting skepticism about prisoners getting more First Amendment protection than public employees, but declining to reach the issue); *Watkins*, 599 F.3d at 795-96 (concluding that a prisoner's speech was not subject to the public concern test that applied to free speech of public employees and instead applying only the *Turner* factors); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009) (concluding that a prisoner's speech may be protected even if it does not involve a matter of public concern). Tension aside, the *Ogurek* Court left open the issue of the scope of First Amendment rights properly afforded to a prisoner. *Ogurek*, 2016 WL 3512626, at *2.

Under controlling precedent, Plaintiff's situation is most akin to the situation considered in *Watkins.* Watkins, a law library employee and inmate, spoke out to a prison library supervisor during a staff meeting and refused to follow the supervisor's directive that he stop giving inmates substantive legal assistance. *Watkins*, 599 F.3d at 792-94. Watkins alleged that in retaliation he was fired from his job, his personal property in the library was mishandled, and the prison

official obstructed his access to the library. *Id.* at 792-94. Though the Court concluded in *Watkins* that the speech was not protected because it was disruptive of the staff meeting, it applied the *Turner* analysis and left open the possibility that an inmate-employee's speech could be protected. *Id.* at 797-99.

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Murphy v. Lane,* 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (retaliation for filing suit). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman,* 226 F.3d at 573 (citation omitted).

Based upon the facts supplied by Plaintiff, including the grievance forms showing that the institution found Held's treatment to be retaliatory, Plaintiff's speech may be the sort that is protected. Plaintiff's speech appears to be less disruptive than the speech in *Watkins* because Plaintiff's refusal to participate in Held's scheme was delivered in a one-on-one conversation—a method contemplated in *Watkins* as preferable to a public display. *See Watkins*, 599 F.3d 797-99. Moreover, in *Watkins*, the inmate was refusing to comply with a directive from a supervisor that was within the supervisor's authority, whereas here, Plaintiff was refusing to comply with Held's request that he participate in the unconstitutional activity of barring other inmates' access to the law library. *See id.* Given the unique characteristics of Plaintiff's speech in this situation, it is possible that Plaintiff's speech was protected.

Plaintiff also has provided sufficient facts to establish a claim of retaliation with regard to

Held's conduct by alleging that after he refused to participate in Held's scheme, Held had him fired from the law library. Such a chronology arguably presents a colorable claim of retaliation; therefore, the Court is unable to dismiss this retaliation claim at this point in the litigation. 28 U.S.C. § 1915A; *see Zimmerman,* 226 F.3d at 574 (reversing district court's § 1915A dismissal because inmate's allegations established that "the exercise of his [First Amendment] right was closely followed by the retaliatory act"). Thus, Plaintiff's claim will proceed under the theories of First Amendment speech and retaliation as to Defendant Held.

## Count 2

After he was fired, Plaintiff alleges that Defendants Held and Dillingworth acted in concert to retaliate against him for standing up to Held by transferring him to the North 2 cell block. Internal grievances Plaintiff appended to his complaint show that the institution found Plaintiff's complaints of retaliation to be substantiated. Such a chronology arguably presents a colorable claim of retaliation; therefore, the Court is unable to dismiss this retaliation claim against Defendant Dillingworth at this point in the litigation. 28 U.S.C. § 1915A; *see Zimmerman,* 226 F.3d at 574 (reversing district court's § 1915A dismissal because inmate's allegations established that "the exercise of his [First Amendment] right was closely followed by the retaliatory act").

## Count 3

Civil conspiracy claims are cognizable under § 1983. *See Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002) (recognizing conspiracy claim under section 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Id*. at 1007. Here, in light of Counts 1 and 2, Plaintiff has proffered enough evidence for his complaint to withstand screening as to his conspiracy claim. He has alleged that Held and

Dillingham conspired to punish him for exercising his First Amendment rights, and that they did so by firing him from his job and sending him to a special housing unit in the fall of 2014. This information outlines the dates, the general purpose of the conspiracy, and the actors. *See id.* Thus, Count 3 will be allowed to proceed against Defendants Held and Dillingham.

***Count 4***

The Eighth Amendment prohibition on cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman*, the Amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. 452 U.S. 337, 347. The Constitution also prohibits punishment that is totally without penological justification. *Gregg v. Georgia*, 428 U.S. 153, 182-83.

Not all prison conditions trigger Eighth Amendment scrutiny–only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes,* 452 U.S. at 346-47; *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302-04 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious

deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's

necessities. *Rhodes,* 452 U.S. at 347; *accord Jamison-Bey v. Thieret,* 867 F.2d 1046, 1048 (7th

Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

     In addition to showing objectively serious conditions, a plaintiff also must demonstrate

the subjective component to an Eighth Amendment claim. The subjective component of

unconstitutional punishment is the intent with which the acts or practices constituting the alleged

punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a

prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also*

*McNeil,* 16 F.3d at 124. In conditions of confinement cases, the relevant state of mind is

deliberate indifference to inmate health or safety; the official must be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he also must draw

the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303;

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir.

1994). The deliberate indifference standard is satisfied if Plaintiff shows that the prison official

acted or failed to act despite the official's knowledge of a substantial risk of serious harm.

*Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that

the officials actually want the prisoner to suffer the harm. *Jackson,* 955 F.2d at 22. Mere

negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

     Here, Plaintiff alleges that the conditions of confinement in the North 2 cell house were

unconstitutional because his cell lacked a window, he was exposed to 24 hour direct lighting, he

experienced noise and sensory disruptions from the crisis watch cells, and as a result of these

conditions, his mental state seriously deteriorated. There is no bright line rule as to what

constitutes an unconstitutional condition of confinement, however, the allegations that Plaintiff

could not sleep due to constant light and sensory disruptions and that his mental condition seriously deteriorated as a result (to the point where he needed psychotropic medications) suggest that, taken together, the conditions may constitute an objectively serious deprivation of adequate housing.

As to the subjective component of the analysis, Plaintiff alleges that Warden Butler was aware of the conditions of his confinement via an emergency grievance that he filed. Although he does not provide proof of the emergency grievance or her receipt of it, the grievance he appended to his complaint did contain allegations that the Warden ignored his pleas for help and that the conditions of his confinement led to a deterioration of his mental health. The grievance officer found that his grievance was substantiated, so again, it is possible that the facts will show that Warden Butler was aware of his conditions of confinement and deliberately failed to act. Thus, the Eighth Amendment conditions of confinement claim will be allowed to proceed against Warden Butler. The other defendants are not being considered in the conditions of confinement context because Plaintiff did not specifically mention them in relation to this claim, and Section 1983 requires personal liability. *See e.g., Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003) (section 1983 liability may only be based on a finding that the defendant caused the deprivation at issue either by direct participation or by demonstrable acquiescence). Thus, Count 4 will be dismissed without prejudice as to Defendants Held and Dillingham.

## **Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which shall be **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

Plaintiff also has filed a second Motion for Leave to Proceed *In Forma Pauperis* (Doc. 9). This Court already granted his request to proceed IFP on June 9, 2016, via text order, so this motion is **DENIED as moot**.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff's First and Eighth Amendment claims in all **COUNTS (1-4)** survive preliminary review**. COUNT 1** shall proceed against **HELD, COUNT 2** shall proceed against **DILLINGHAM, COUNT 3** shall proceed against **HELD** and **DILLINGHAM,** and **COUNT 4** shall proceed against **BUTLER.**

**COUNT 5** is **SEVERED** into a separate action. The claims in the newly severed case shall be subject to merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk is **DIRECTED** to file the following documents:

1)  This Memorandum and Order;
2)  The original complaint (Doc. 1); and
3)  Plaintiff's motion to proceed *in forma pauperis* (Doc. 2).

Plaintiff **will be responsible for an additional $350.00 filing fee** in the newly severed case. No service shall be ordered on the defendant in the severed case until the § 1915A review is completed.

With respect to **COUNTS 1** through **4**, the Clerk of Court shall prepare for **DEFENDANTS HELD, DILLINGHAM, AND BUTLER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service

on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact

that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 26, 2016**

s/ NANCY J. ROSENSTENGEL
**NANCY J. ROSENSTENGEL**
**United States District Judge**